# Patterson *against* Reed.

The assignor of a chose-in-action is not a competent witness for the plaintiff in an action to recover the claim assigned.

If a promise be made to pay the debt of another if the creditor will take the debtor's note payable at a distant day, the promisor must have notice that the proposition is acceded to, and the note accepted, otherwise he will not be liable on his guaranty.

ERROR to the District Court of *Lancaster* county.

William Reed and Thomas Reed, for the use of William Reed, against James A. Patterson, executor of Alexander Patterson deceased. This was an action on the case in *assumpsit*, in which the plaintiff declared that one Abraham Hatfield was indebted to the plaintiffs in the sum of $2000, and that in consideration of forbearance the defendant's testator promised to pay the debt. The plaintiff called a witness, who proved that six days before the suit was brought he was present and saw William Reed, one of the plaintiffs, take an assignment from Thomas Reed of all his interest in the claim sued for, and for which he then paid him $300 in cash. The assignment was given in evidence, and the plaintiff offered Thomas Reed as a witness. The defendant objected to him as incompetent, but the court overruled the objection and sealed a bill of exception.

Thomas Reed then testified, in substance, that Hatfield was indebted to William and Thomas Reed in the sum of $2000; that he and Alexander Patterson rode to the field where Abraham Hatfield was, and told him that he must have the money; that Hatfield could not then pay, but offered to give his note at four months, and which he declined to take, and told Hatfield that he would bring suit against him; that after they had separated, Alexander Patterson, the defendant's testator, who was the father-in-law of Hatfield, told the witness that he had better take his

note at four months, and that, if he would, that he, Patterson, would guarantee that it should be paid at that time; to which the witness replied, "Upon your guaranty I will take it at four months; do you send Abraham up to Mount Joy this evening:" that he came to Mount Joy the next morning, and he then took his notes at four months. They were not paid at maturity, and shortly after Patterson died.

The counsel, among other points propounded to the court, requested them to instruct the jury,

"That if, after the notes were taken, Reed did not give notice to Patterson that he considered him bound in case the notes were not paid by Hatfield, so as to enable Patterson to protect himself against such alleged security, plaintiff cannot recover."

In answer to which, the court instructed the jury that it could be fairly inferred from the testimony that Patterson had notice.

*Mr. Parke*, for plaintiff in error. 2 *Stark Ev.* 372; 4 *Johns.* 476; 5 *Whart.* 452, 458; 1 *Rawle* 197; 2 *Watts* 268.

*Mr. Stevens*, contra. 3 *Whart.* 346; 5 *Watts & Serg.* 509.

The opinion of the Court was delivered by

KENNEDY, J.—Among the various matters assigned for error, two only seem to be of sufficient importance to require notice. First, the competency of Thomas Reed, named as one of the plaintiffs below on the record, to testify as a witness in support of the plaintiff's claim. And, second, the answer of his honour, the Judge of the District Court, to the fifth point submitted by the counsel of the defendant below. The first matter presents the question, Was Thomas Reed a competent witness to support the claim of the plaintiffs? It is perfectly manifest that at no time was it ever conceived by the plaintiffs below that the claim could be sustained, unless Thomas Reed, one of them, could, by some device or other, be admitted as a witness for that purpose. It is not even pretended that any other person than Thomas Reed, one of the plaintiffs on record, ever knew the fact that Alexander Patterson, the defendant's testator, had promised to guarantee the payment of the debt owing by Abraham Hatfield to William and Thomas Reed, the plaintiffs, provided they would take of Hatfield his notes for the same, payable at four months. The undertaking of the testator in this respect is alleged to have been made by him in his lifetime to Thomas Reed, by word of mouth merely, when they were by themselves, without the presence of any other person. It does not appear that the testator ever admitted that he had made such undertaking. The plaintiffs below, it must be observed, were partners in carrying on the business of making and selling iron, and in the course of their business, as such, contracted the debt in question originally with Hatfield, amounting to upwards

VII.— 19　　　　　N

of $2000. The buying or selling to each other the debts or claims owing to them as partners, does not appear to have been any part of their ordinary business; but upon this occasion it appears that Thomas Reed assigned all his interest in the claim in question, amounting to $2000 and upwards, to William Reed, his copartner, for the comparatively small sum of $300, six days only before the commencement of this action. Now, from these facts and circumstances, it is impossible to come to any other conclusion than that the assignment by Thomas Reed to William Reed of his interest to the claim in suit, was made for the mere purpose of enabling the latter to recover it by means of the testimony of the former. It was, therefore, made for the sole purpose of enabling William Reed to recover the amount of the claim from the estate of Alexander Patterson; and this conclusion is the more irresistible, as the assignment appears to have been altogether foreign to the ordinary business in which they were engaged, and in nowise incidental to any transaction embracing any other object between them. Then, taking it to be true that Thomas Reed, by his assignment to William Reed, gave up and relinquished all his interest in the claim, without any expectation of participating in any recovery that might be had of it thereafter, how must the contract which led to the assignment have been brought about and concluded between them? Is it not perfectly apparent that William Reed, putting the most favourable aspect on the transaction for them that can well be imagined, must have said, in substance, to Thomas, "You say that Alexander Patterson, in his lifetime, promised to guarantee the payment of the debt owing to us by Abraham Hatfield, if we would take Hatfield's notes for the same, payable in four months?" To which Thomas replies, " He did so promise;" when William asks Thomas, "Will you testify on your oath that he did so promise? for, unless you do, it is impossible to recover it from Patterson's estate; and as Hatfield is insolvent, it must be regarded as a lost debt." To which Thomas replies, " I will so testify on oath." Then William says, " I will give you $300 for your interest in the debt, if you will assign your interest in it to me, and testify that Alexander Patterson promised in his lifetime to pay it as you have mentioned." To this proposal Thomas assents by saying, " I will do so;" and accordingly he executes the assignment. Now, is it likely to promote the cause of truth, or the administration of justice according to truth, that a person after making such an agreement, under such circumstances, should be permitted to come forward and testify as a witness in fulfilment of it? The money which the party offered as a witness received, upon his executing the assignment, may very properly be said to have been given to him in consideration of his having pledged himself that he would support the claim, by his oath as a witness, which he had just assigned. Disguise and turn the matter as we will in our minds,

[Patterson v. Reed.]

it is impossible to escape from the conclusion that the pledge of Thomas Reed to testify as he said he could and would do, was the only consideration given by him to his co-partner, William Reed, for the $300; and that William would never have parted with his $300, if Thomas had not assured him that he would so testify. If contracts founded upon such considerations are to be upheld for the purpose of making the parties to the original contracts competent witnesses, who otherwise would be incompetent, to support claims to be sued for on the original contracts, in pursuance of their agreements to do so, it is highly probable, if not certain, that anything but justice may be the consequence of it. It is not only opening a door to fraud, but holding out a strong temptation to commit perjury, and such as the weakness or depravity of human nature may be unable or unwilling to resist; and hence sound policy, as well as the purity of the administration of justice, requires that one of two plaintiffs on the record, a party to the contract on which the suit is brought, should not be allowed, under such circumstances, to testify on behalf of the other. If it were to be sanctioned and allowed, why not permit one of two defendants to testify as a witness for the other, where the latter has paid one-sixth or one-seventh of the amount of the plaintiff's claim to the former for doing so, if the latter will bring into court the whole amount of the money claimed by the plaintiff, together with a sum sufficient to cover all costs that have or may accrue, and at the same time release the defendant offered as a witness from all liability to contribution in the event of the plaintiff's recovering? Or why not permit a sole defendant to become a witness to show that the plaintiff is not entitled to recover, where the defendant has got a third person to bring into court a sum of money sufficient to meet the amount of the plaintiff's claim, and to cover all costs that have or may accrue, by his having paid to such third person a sixth or seventh, or other proportional part of the amount claimed by the plaintiff, and making him believe at the same time, by his declaration to that effect, that he will by his own evidence show most incontestably that the plaintiff is not entitled to, and never can recover? To admit a defendant to become a witness in such case to defeat the plaintiff's claim, would be repugnant, I apprehend, to the common sense of mankind, as well as overturn every principle of law on the subject. And yet it may be said, so far as money or money's worth is concerned, that he has no interest in the result of the action; that he can neither be a gainer or loser by it; so that there is no substantial difference between permitting a defendant and a plaintiff to testify in the cases put. The only difference is that the defendant pays a sum of money, less than the amount of the plaintiff's claim, for the purpose of getting a third person to take his place, rather than run the risk of paying the whole amount claimed by the plaintiff; whereas the plaintiff receives from a

[Patterson v. Reed.]

third person a sum of money, less than the amount of his claim, rather than encounter the risk of losing the whole thereof. It therefore appears that the plaintiff receives money for becoming a witness, whereas the defendant pays for becoming such; so that if there be any real difference between the two cases, it would seem to be rather in favour of the defendant's being permitted to become a witness, who has received no money for the purpose of becoming such. It is very clear, however, that the law, from motives of policy, and in order to prevent all temptation to perjury and injustice by means of it, will not allow a person, though not a party on the record to the suit, to testify in favour of his own interest, however small it may be, that he has in the event of the suit. But would it not be at least equally dangerous, if not more so, to allow a person who is a plaintiff on the record, and had an interest in the contract on which the suit is brought, that he parted with for the purpose of becoming a witness, to testify in support of the claim made therein, after having received a considerable sum of money, paid him upon the faith induced by his assurance that he would testify so and so for the purpose of sustaining the action? The pledge or assurance that he would so testify was given by him before he parted with his interest by executing the assignment, and when it is clear that he was incompetent to testify. But, having pledged himself to the assignee that he would testify as he stated he would, and having thus induced the assignee to pay him the sum of money agreed on, upon the faith of such assurance, how can it be reasonably expected, if permitted afterwards to become a witness for the assignee, that he would testify otherwise, whether true or false, than he said he would do? If he were to testify otherwise than he said he would, though true, he would be branded as a swindler, and in the estimation of the world have a degree of infamy attached to him, little short, if anything, of that which attends perjury. He has certainly placed himself in a situation, to say the least of it, which makes it dangerous in the extreme to the administration of justice to admit him as a witness in support of the claim for which he received the money. He feels that he must redeem his pledge, or forfeit all claim to truth and honesty in the public estimation; and will he not be induced, rather than encounter such consequences, which must inevitably follow, to confirm by his oath or solemn affirmation the statement he made when he obtained the money for the assignment of his claim or interest, though it be untrue; and more especially, as in this case, where the only person is dead who, if he were alive, could contradict him if he testified untruly? We are satisfied, under the circumstances of this case, that Thomas Reed ought not to have been allowed to testify in support of the claim of the plaintiffs below, and that the court erred in admitting him to do so.

In regard to the answer of the court given to the fifth point

[Patterson v. Reed.]

submitted by the counsel of the defendant below, which is the second matter intended to be noticed, we think there is also error. There was certainly no evidence, not even a spark, given on the trial of the cause, tending to show that Alexander Patterson, the testator of the defendant below, was notified by the plaintiffs, or by any other person, that the plaintiffs had taken of Abraham Hatfield his notes for the debt owing by him to them, payable in four months, upon the faith of the guaranty which it is alleged Patterson gave to them if they would do so. Thomas Reed testified merely that Patterson was to send Hatfield to Mount Joy to him that evening, and he would take his notes on a credit of four months; but Hatfield, as he further testified, did not come until the next morning, when Reed told Hatfield " that in consequence of what Mr Patterson had said, (without saying what it was), I have concluded to take your notes at four months." Hatfield then drew the notes accordingly, and handed them to Reed. Hatfield did not say at whose suggestion or instance he came there that morning. He merely said 'that he had had some conversation with Mr Patterson about giving the notes; but not a word was said by Hatfield to Reed, or by Reed to Hatfield, about Patterson's having said he would guarantee the payment of the notes. Nor was there a tittle of testimony given, going to show that Patterson was ever advised of, or knew that Reed had taken of Hatfield his notes payable in four months. It appeared that Hatfield was the son-in-law of Patterson, and that they lived together at the time, in the same house; and from this circumstance the court instructed the jury that it was not necessary that Reed should have given notice to Patterson that he had taken Hatfield's notes according to what had passed between them; that from the facts testified to by Thomas Reed as stated, if true, it was necessarily to be inferred that Patterson had notice. In this we think that the court erred; for although the facts testified to might perhaps have furnished a ground for conjecturing that Patterson had notice of the notes having been given, yet there was certainly no evidence of it, nor facts testified to from which it was necessarily to be inferred. Mere conjecture will not suffice in such case, where it is the duty of the party to give such notice, and of course to prove it when he afterwards attempts to make the guarantor liable. That such notice ought to have been given in order to make Patterson liable on the guaranty which it is alleged he made, is too well settled to admit of the least doubt. It was necessary that he should have had notice in order that he might provide for the payment of the notes at maturity, and, if he had to do so, that he might in the mean time procure an indemnity from Hatfield, if possible, for doing so.

Judgment reversed, and *venire facias de novo* awarded.