## Cochran *against* M'Teague.

A creditor who assigns his claim a few months before the commencement of suit upon it, for the purpose of being a witness for the assignee, is incompetent.

ERROR to the Common Pleas of *Delaware* county.

Assumpsit to May Term 1843, No. 10, brought by Daniel M'Teague for the use of William Belt, and subsequently marked for the use of John Bouvier, against Isaac E. Cochran and others, administrators of John Cochran, deceased. The plaintiff claimed under the following promissory note and agreement:

" I promise to pay Daniel M'Teague or bearer $200, if I get the contract of the Catholic church at Chester; one hundred to be paid on demand, the other hundred to be paid three months after date.

JOHN COCHRAN.

And I do further agree to pay Daniel M'Teague eight dollars per week for carrying on and superintending said church above mentioned, from this date till said church be all finished completely. Dated the 14th September 1842.

JOHN COCHRAN."

The plaintiff then gave in evidence the following assignment, endorsed on the foregoing:

" I hereby assign and transfer to William Belt all my right and title or interest in and to the within agreement, and all debts and moneys due or payable to me from John Cochran, founded upon the same, to this date.

DANIEL M'TEAGUE.

Witness P. B. Carter.
    Chester, March 25th, 1843."

And also the following:

" In the Court of Common Pleas of Delaware county.

Daniel M'Teague, for the ⎤ No. 10 to May Term 1843. And now
    use of William Belt,   ⎬ to wit, May the 4th, 1843, judgment
        *v.*               ⎪ in favour of the plaintiff for the sum
    John Cochran.          ⎦ of $295, &c.

For a valuable consideration to me in hand paid, I hereby assign and transfer all my right, title and interest in the above-named judgment unto John Bouvier, Esq., of the city of Philadelphia, his heirs and assigns for ever, to have and to hold to his and their use, this 17th day of January 1844.

WILLIAM BELT. [SEAL.]

Witness P. B. Carter."

The plaintiff then called Saurin, Le Brun, and other witnesses, to show that the defendant obtained the contract, and the plaintiff superintendence of the work. The defendant examined witnesses to show that the plaintiff and defendant were partners in the contract. The plaintiff then offered M'Teague as a witness, and produced the following release:

"Whereas Daniel M'Teague did, on the 25th day of March 1843, on the back of a certain note and agreement between him and John Cochran, assign and set over to me all his right and title to the said note and agreement, and all monies due him from said John Cochran:

Now I, William Belt, do hereby release and discharge the said Daniel M'Teague from all right of action, claims and demand for and on account of said matters so assigned to me, fully and absolutely, whether I or the person to whom I have assigned the same shall recover of the said Cochran or his administrators or estate any money, or wholly fail to recover anything upon said claims against said John Cochran or his representatives. Witness my hand, this 28th day of February 1844.

WILLIAM BELT. [SEAL.]

Sealed and delivered in the }
　presence of E. Darlington. }

The plaintiff further called P. B. Carter, who testified as follows:—I know that M'Teague has no interest in any way in this matter. The transfer was made before suit at my office; both parties were present. Belt gave M'Teague his note for $400 payable in nine months. The transfer was made for the purpose of M'Teague's being a witness. I can't say that M'Teague was indebted to Belt. He brought Belt to my office. Belt's note is taken up in the transfer to Bouvier. That transfer was to have been made previous to the last court, but was not executed until January. I saw no consideration pass. Belt's note has been surrendered. It is to Judge Bouvier to whom the transfer has been made. Mr Elliott has feed me as the agent of Bouvier. What I know is from the parties. *Cross-examined.*—I have one or two letters from Judge Bouvier. He sent me a form of the transfer. I think I could find it. He has not been here at all himself. The first assignment was executed at Belt's house; he and his lady were present. Belt and myself were present to-day. Belt's note to M'Teague was surrendered 17th January. I handed it to him. The note had remained in my possession from the time of the first transfer from M'Teague to Belt.

The plaintiff then called M'Teague, who on his voir dire stated: —Bouvier paid $330 in cash to Belt in January when the transfer was made. I don't know what became of the note; it was in Carter's hands. The $330 was paid to me; the moment I had the money paid down, I signed the agreement drawn up in Judge

VIII. — 35

Bouvier's office. I have parted with all my interest in the claim. The money was paid to me by Judge Bouvier in his office. *Cross-examined.* — I signed an agreement against Belt's note. I don't know what became of the agreement. I received specie in part and $105 in notes. I don't know who subpœnaed the witnesses. Elliott gave the directions as to the subpœnas. I accompanied him to Carter's office. Elliott is not here to-day, nor was he yesterday. I subpœnaed Le Brun. I was at Squire Bartram's office when the depositions of Saurin and Le Brun were taken. I happened to be in Carter's office, and he took me there; he did not say what for. I did suggest questions to my counsel in the examination. I had possession of Belt's note, but not out of Carter's office. The moment it was witnessed, it was handed into Belt's hand, and he handed it to me; it was witnessed by Carter; no others present.

The defendant objected to M'Teague as incompetent, but the court admitted him and sealed a bill of exceptions.

Some other exceptions were taken, but not insisted on here.

*Edwards*, for the plaintiff in error, referred to *Ludwig* v. *Meyre*, (5 *Watts & Serg.* 535).

*Darlington*, contra.

The opinion of the Court was delivered by

SERGEANT, J.—This case seems to fall within the principles decided in *Patterson* v. *Reed*, (7 *Watts & Serg.* 144), and in the previous cases of *Leiper* v. *Peirce*, (6 *Watts & Serg.* 555), and *Post* v. *Avery* (5 *Ibid.* 509). A few months before the commencement of the suit, M'Teague, alleging a claim against Cochran upon a note not negotiable and a contract for wages, assigns his interest to Belt, who then brings suit in M'Teague's name for his own use. The defendant sets up a partnership, and to repel this and procure a verdict, M'Teague is produced as a witness. To introduce his evidence and show that it was a fair and *bonâ fide* transaction, Carter is examined, who states that the transfer was made for the purpose of making M'Teague a witness. If so, then M'Teague, in consideration of transferring his claim, not only gives his note for $330, but undertakes virtually to sustain the claim by his testimony, which brings it directly within the decision in *Patterson* v. *Reed*, and makes it indeed a much stronger case; for here the condition is directly avowed, which there was inferred from the circumstances. It is not to be expected that such a party to the record should be an indifferent witness, though he has assigned his claim, if he is still under an obligation to the assignee to stand ready as a witness for him when necessary to help out a doubtful case before the jury. There are some other circumstances calculated to raise suspicion, such as the note's not being delivered

over to M'Teague but remaining in the hands of Carter, who appears to have been an agent of both, as well as Bouvier, and moreover, the activity of M'Teague in the preparation of the suit, that render doubtful that fairness in the transaction which the party offering such witness is bound to establish before he can be considered as competent.

Judgment reversed, and a *venire de novo* awarded.