On Petition for Restraining Order Pending Appeal, decided Oct. 30, 1908.
On the Merits, argued Feb. 1, decided March 1, 1910.
Rehearing allowed and re-argued Aug. 4, decided Dec. 13, 1910.

## LIVESLEY *v.* KREBS HOP COMPANY.

[97 Pac. 718: 107 Pac. 460: 112 Pac. 1.]

APPEAL AND ERROR—SUPERSEDEAS—ALLOWANCE BY COURT.

1. Under the Constitution of Oregon, Article VII, Section 6, providing that the Supreme Court shall have jurisdiction only to reverse the final decisions of the circuit courts, it has no original jurisdiction, and cannot issue any writ in an original proceeding, but, as an incident to its

appellate jursdiction, it nas such inherent powers as are necessary to the effectual exercise of such jurisdiction, and for that purpose it may issue a restraining order.

APPEAL AND ERROR—SECURITY—NECESSITY.

2. Section 420, B. & C. Comp., authorizing injunctions pending suits, is applicable to the Supreme Court when it exercises its power to issue a temporary injunction, and it should allow the writ only on the filing of the undertaking provided for by Section 419.

APPEAL AND ERROR—SECURITY—NECESSITY.

3. Pending the determination of an appeal from a decree dissolving a preliminary injunction and dismissing a suit to restrain the enforcement of a judgment, the Supreme Court has power to issue a temporary injunction restraining the enforcement of the judgment, though a temporary injunction cannot be allowed simply for the protection of appellant from damage or hardship.

SALES—BREACH BY SELLER—DAMAGES—EFFECT OF REFUSAL BY BUYER
    TO PERFORM.

4. Plaintiffs contracted to buy of defendant 100,000 pounds of hops each year for five years, at a certain price, to be paid in installments. the hops to be grown upon a certain farm and delivered not later than October 15th each year. The contract was complied with the first year, after which the farm was sold and plaintiffs in the spring of the next year notified defendant and the purchaser that they would retire from the contract, and thereafter refused to recognize its existence. Defendant brought an action on the contract and secured judgment. Defendant on October 15th of the second year had the hops on hand ready for delivery if demanded but no demand was made, and no offer was made to deliver them. The hops at that time were worth 14 or 15 cents per pound. Part of the hops were sold the following spring at 7 cents per pound, and the balance a year later were worth only 2 or 2½ cents per pound. *Held,* that notwithstanding such judgment, the effect of which was to continue the contract in full force, plaintiffs, having refused to recognize the contract as binding, were not entitled to recover on the basis of the value of the hops on October 15th.

SALES—BREACH OF CONTRACT BY BUYER—RIGHTS AND DUTIES OF
    SELLER—RESALE OF GOODS.

5. A seller is not bound to resell the goods for the protection of a buyer who refuses to recognize the binding effect of the contract, and defends a suit for the price, since it is for the seller to decide whether it will sell the goods and retain the proceeds, and await the final outcome of the litigation or hold the same in readiness for delivery at the termination thereof, and only in case of fraud or of an abuse of discretion can he be held accountable for any greater sum than the goods are actually worth at the time the buyer asserts his right to enforce the contract.

SALES—BREACH OF CONTRACT BY BUYER—TENDER BY SELLER.

6. It is not incumbent on a seller, in order to avoid responsibility to the buyer for retention of the goods on the buyer's repudiation of the contract, to tender a delivery thereof on the date specified in the contract.

Sig. 12

SALES—BREACH BY SELLER—MEASURE OF DAMAGES.

7. Where the seller wrongfully retains the goods, he is liable to the buyer for the highest market price between the date for delivery and the time of the actual sale thereof.

COSTS—ON APPEAL—PENALTY FOR DELAY—GOOD FAITH.

8. Under Section 559, B. & C. Comp., which provides for a 10 per cent penalty for delay caused by an appeal, where it is affirmed and there is no probable cause for taking the appeal, where the legal problems presented were not easy of solution, and were of a class upon which eminent counsel may differ and the suit was manifestly instituted and prosecuted in good faith, it was not within the statute.

SALES—BREACH OF CONTRACT—REMEDIES.

9. Where a seller refused to acquiesce in the buyer's attempt to cancel the contract of sale before any payment was made thereon, and recovered judgment for advance payments overdue, the buyer, refusing to recognize the contract as binding, could not compel an accounting after a resale of the goods by the seller on the theory that he could recover on the basis of the value of the goods on the date fixed for delivery, so that he could not enjoin enforcement of the judgment against him.

APPEAL AND ERROR—EQUAL DIVISION OF COURT—EFFECT.

10. Where the Supreme Court is equally divided, the decree of the trial court is affirmed.

Decided October 20, 1908.

ON PETITION FOR RESTRAINING ORDER PENDING APPEAL.

[97 Pac. 718.]

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This suit was brought in the circuit court of Marion County, by T. A. Livesley and John J. Roberts, co-partners doing business under the firm name and style of T. A. Livesley & Co. against the Krebs Hop Company, a corporation, to enjoin it from enforcing by execution the judgment entered in that court on the 30th day of April, 1908, upon the mandate of the Supreme Court in the case of *Krebs Hop Co.* v. *Livesley* for the sum of $4,048, besides interest and costs, and to cancel the judgment. The amount involved in the action and for which the judgment was rendered being advance payments due from these plaintiffs to the defendant on a contract for the purchase of certain hops, the judgment having been

obtained prior to the harvesting or delivery of the hops to the plaintiffs, plaintiffs allege in this suit that the defendant did not tender or deliver the hops to them, but has sold and disposed of the hops to other parties, and that defendant is about to, and will, if not restrained, issue an execution on the judgment and enforce it against plaintiffs, and that defendant is insolvent. A preliminary restraining order was issued by the judge of the lower court which was served upon the defendant. Thereafter the suit was put at issue and tried by the court, and findings in favor of the defendant were filed, and on August 10, 1908, a decree was rendered dissolving the injunction and dismissing the suit. The transcript on appeal was filed in this court on September 14, 1908, and on September 16th plaintiffs filed in this court a petition asking for a restraining order to stay the execution pending a hearing on the merits, the motion being supported by an affidavit showing that execution was issued on the judgment August 15, 1908, against the property of the plaintiffs and placed in the hands of the sheriff of Marion County for enforcement, and that the lower court°refused to grant to plaintiffs a stay of execution pending the appeal. On the 16th day of September, 1908, this motion was by the Chief Justice set down for hearing for October 5th, pending which hearing a temporary restraining order was issued.

RESTRAINING ORDER ISSUED.

*Messrs. Teal & Minor* and *Mr. William M. Kaiser* for the petition.

*Mr. John A. Carson* and *Mr. Thomas Brown, contra.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first question to be decided is whether the Supreme Court in such a case has jurisdiction to issue a temporary restraining order. The jurisdiction of the

Supreme Court is defined by the Constitution of Oregon, Article VII, Section 6, viz.:

"The Supreme Court shall have jurisdiction only to revise the final decisions of the circuit courts."

And it can have no jurisdiction beyond what is granted by the constitution. Therefore it has no original jurisdiction, and cannot issue any writ in an original proceeding, but, as incident to its appellate jurisdiction, it has such inherent powers as are necessary to enable it effectually to exercise such jurisdiction. Elliott, App. Proc. § 20 says:

"It is not to be understood that an express statutory provision is required to confer upon an appellate tribunal authority to exercise an auxiliary authority in aid of its appellate power, although such auxiliary authority may be in its nature original, for all courts of the rank of appellate courts proper have such general powers as are necessary to enable them to effectually exercise the jurisdiction conferred upon them."

The grant of appellate jurisdiction, whether made by the constitution or by statute, necessarily vests in such court all powers of an incidental nature required to make the granted jurisdiction effective. Ib. § 22. At section 512 the same author says that appellate tribunals are invested with power to issue injunctions when necessary to enable them fully and effectually to exercise appellate jurisdiction; and this authority is recognized in many of the states under constitutional limitations similar to those of this State. The Wisconsin Constitution (Article VII, Section 3) provides: "The Supreme Court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only"—and, further, that it shall have power to issue writs of *habeas corpus*, mandamus, injunction, *quo warranto, certiorari*, and other original and remedial writs, and to hear and determine the same. In *Cooper* v. *City*, 34 Wis. 181, in discussing the power

of the Supreme Court to issue a writ of injunction, the court holds that the third clause of that section of the constitution, relating to the issue of writs, has reference only to the exercise of original jurisdiction, namely, to suits commenced in that court, and say that, as incident to the full and proper exercise of appellate jurisdiction in cases brought up by writ of error or appeal, the power to grant the writ or order the stay of proceedings in these cases exists without an express grant. To the same effect is *People* v. *Cook Circuit Court,* 169 Ill. 201 (48 N. E. 717) ; *Kent* v. *Mahaffy,* 2 Ohio St. 498; *Yeoman* v. *Lasley,* 36 Ohio St. 416; *Wagner* v. *Railway Co.,* 38 Ohio St. 32; *Leech* v. *State,* 78 Ind. 570; *Jones* v. *City of Little Rock,* 25 Ark. 284; *Doughty* v. *Railroad Co.,* 7 N. J. Eq. 630 (51 Am. Dec. 267). Mandamus in aid of appellate jurisdiction is recognized by this court in *Che Gong* v. *Stearns,* 16 Or. 219 (17 Pac. 871). See, also, Works, Courts & Juris. pp. 98, 171. Therefore we conclude that the appellate court has power, as incidental to its jurisdiction, to issue a restraining order when necessary to aid or protect its appellate jurisdiction.

2. And in a case in the appellate court, in which a provisional injunction is proper, Section 420, B. & C. Comp., is equally as applicable as in cases in the circuit court. In such cases the writ should be allowed only upon filing the undertaking provided for in Section 419, B. & C. Comp. Elliott, App. Proc. § 513, says:

"The statute makes no provision as to the procedure in obtaining a restraining order or injunction on appeal, but the practice is substantially that prescribed for the trial court."

Mr. Justice JOHNSON in *Wagner* v. *Railway Co.,* 38 Ohio St. 40, a case similar to this, speaking of the writ, quotes Section 5572 of the Ohio Code, which contains similar provisions to Section 420, B. & C. Comp., and says: "This would authorize a temporary order pend-

ing the litigation, and is an exercise of the appellate power, which follows the case into whatever court it may be appealed, or taken on error, as part of the appellate jurisdiction conferred by law."

The question then arises: Is this a proper case for the issuance of such a writ? It cannot be allowed simply for the protection of plaintiffs from damage or hardship. That is the province of a court of original jurisdiction. It is said in *Doughty* v. *Railroad Co.,* 7 N. J. Eq. 629, 636 (51 Am. Dec. 267), that the issuance of such a writ in aid of appellate jurisdiction "is manifestly a very high and delicate exercise of power—one which should by no means be exercised as a matter of course, but only upon the most imminent necessity." This court has jurisdiction to issue this writ only in aid of or to protect its appellate jurisdiction, and for no other purpose. But the threatened enforcement by execution of the judgment, which is the subject of this suit, would operate to satisfy the judgment, and thus nullify any decree this court might render relating thereto, or at least render such a decree difficult of enforcement. As said in *Chegary* v. *Scofield,* 5 N. J. Eq. 525, 531: "We can do nothing but review the particular order or decree appealed from, except that, * * where the Chancellor, by his decree, has loosened a man's hands, we may, by a preliminary order, tie them up again, until we can hear the appeal and determine whether he ought to be let loose or not."

Therefore we are of the opinion that this is a proper case for issuance of the writ to preserve the subject of litigation pending the hearing on the merits; and a restraining order will be allowed, as prayed for in the application, upon plaintiffs filing an undertaking in this court, as provided by Section 418, B. & C. Comp., in the sum of $500.          PETITION ALLOWED.

Argued Feb. 1, decided March 1, re-argued on rehearing Aug. 4, 1910.

## ON THE MERITS.

[107 Pac. 460.]

Statement by MR. JUSTICE KING.

This is a suit by T. A. Livesley and John J. Roberts, co-partners as T. A. Livesley & Co., against the Krebs Hop Company, a corporation, for an accounting, and to enjoin the issuance of execution and collection of a judgment, for the sum of $4,000, in a certain action, wherein this defendant was plaintiff and these plaintiffs were defendants. The facts leading up to the controversy are as follows: On August 25, 1904, the parties hereto entered into a contract in writing, wherein Livesley & Co., the plaintiffs, agreed to purchase, and the Krebs Hop Company, defendant, agreed to sell, a certain quantity of hops therein specified. Under this contract (see 51 Or. 527, 528: 92 Pac. 1084) the Krebs Hop Company agreed to sell and deliver to these plaintiffs, f. o. b. cars Independence, Or., or f. o. b. boat Murphy's Landing, not later than the 15th day of October, during each of the years 1905, 1906, 1907, and 1908, 100,000 pounds of hops, the hops to be the product of, and grown on, the Krebs Hop Company's Buena Vista farm, sometimes known as the Henderson W. Murphy farm, situated in Polk County. The contract price of the hops was 14 cents per pound, to be paid $2,000 between the 1st and 15th day of April of each year, $2,000 between the 1st and 15th day of May of each year, $6,000 between the 1st and 5th day of September of each year, and $4,000 on delivery and acceptance of the hops by the buyer. No controversy respecting compliance with the contract occurred during the year 1905, but on November 4th of that year the Krebs Hop Company executed a warranty deed, purporting to convey to Ladd & Bush the entire farm upon which the hops were to be grown. The deed was recorded

11 days later, at which time an instrument in writing was executed, assigning to Ladd & Bush all payments to accrue to it under the hop contract. Subsequently Ladd & Bush gave notice to Livesley & Co. that all moneys accruing under the contract must be paid to them, and not to their assignor. After some correspondence Livesley & Co. notified Ladd & Bush and the Krebs Hop Company in writing, to the effect that they would retire from and refuse to be bound by the contract. The Krebs Hop Company, without offering to deliver any hops, on May 19, 1906, brought an action against the plaintiffs on the contract, not for damages, but to recover and secure, and did secure, judgment in the sum of $4,000 for the April and May installments. Livesley & Co. then appealed to this court, resulting in an affirmance of the judgment, and on April 30, 1908, a mandate from this court, affirming the judgment in the court below, was entered. At the time of the commencement of this suit defendant was threatening to issue an execution against plaintiff on this judgment; hence this proceeding.

The complaint, after alleging facts in substance as above, further alleges, in effect: That during the year 1906 no hops were harvested or baled on the premises described in the contract until after the 1st day of September of that year, and that at all times, from the 1st day of September, 1906, until after the 15th day of October, 1906, hops, of the kind and quantity mentioned in the contract, were of the reasonable market value of 14 cents per pound. That defendant company did not deliver or tender to the plaintiffs any of the hops raised upon said premises in the year 1906, but raised more than 100,000 pounds of hops, which it retained and sold, and for which no accounting or offer of accounting has been made to plaintiffs. That on April 30, 1908, plaintiffs made to defendant the following tender in writing:

"To Krebs Hop Company, a Corporation, Salem, Oregon:   We, the undersigned, T. A. Livesley & Co., do hereby offer to pay to you and do hereby tender to you the sum of $127.55 in money in full payment, settlement and satisfaction of that certain judgment obtained by you against T. A. Livesley and John J. Roberts, doing business under the name of T. A. Livesley & Co., in the Circuit Court of the State of Oregon, for Marion County, Department No. 1, on the 16th day of July, 1906, for the sum of $4,048.00 and $39.30 costs and disbursements, as appears by your cost bill on file therein, from which said judgment, T. A. Livesley & Co. appealed to the Supreme Court of the State of Oregon, and which said judgment was affirmed on appeal by the Supreme Court, December 17, 1907.   This tender is intended to cover any loss on your part on account of any additional interest you may have had to pay by reason of our failure to pay to you the said advances sued for in said cause, and also your costs and disbursements in the Circuit Court and your costs and disbursements in the Supreme Court and legal interest thereon.   And we hereby tender to you and offer to pay you any and all legal damages, if any, which may have resulted to you in the year 1906 on account of our failure to make the said advances to you and on account of our withdrawal from the contract sued on therein, and we hereby demand the immediate cancellation and satisfaction by you of the whole of the said judgment.   Dated at Salem, Oregon, this the 29th day of April, 1908.   T. A. Livesley & Co., by John J. Roberts."

The further averments in the complant, so far as material to the controversy, are:

"That it is unjust and inequitable and unconscionable to require plaintiffs to pay said judgment for part of the purchase price of said hops, when the defendant has failed and neglected to deliver to plaintiffs the same or any part thereof, and failed and neglected to account to plaintiffs therefor, and plaintiffs would be unable to have any redress against defendant after paying said judgment.   That the said action was brought long before the time mentioned in the contract for the delivery of the

hops in 1906, and the plaintiffs could not make any defense thereto on account of nondelivery of the hops, and the failure of defendant to make any accounting thereof to plaintiffs, and that the defendant took an unfair and unconscionable advantage of plaintiffs by suing upon the contract, instead of bringing an action for damages on account of the breach thereof on the part of plaintiffs for not making said advances on the purchase price of said hops. That the only damages that could have resulted to defendant on account of the failure of plaintiffs to pay said advances sued for in said action, and their withdrawal from said contract, is any additional interest it might have had by reason of such failure on the part of plaintiffs, and the said costs and disbursements and legal interest thereon. That plaintiffs have no knowledge or information of any other damages sustained by defendant on account of plaintiffs' said failure to make said payments on said contract for the year 1906, or on account of their withdrawal from said contract, and that said sum of $127.55 so tendered to defendant will cover all said damages. That the plaintiffs do hereby tender to defendant and bring into court said sum of $127.55 in payment and satisfaction of said judgment and do hereby offer to pay to it any and all additional damages, if any, which may have resulted to defendant in the year 1906 on account of their failure to make said advances, and on account of their withdrawal from said contract, after a due accounting and the amount thereof duly ascertained by the court. At the time said contract was entered into the Krebs Hop Company was the owner and in possession of the lands described in said contract comprising more than 640 acres of land in the county of Polk, State of Oregon, and was the owner also of other lands situate in Marion County, Oregon, a part of which was planted in hops and was amply able to fulfill said contract, but, subsequent to the date of said contract, the defendant became involved, and on or about the 4th day of November, 1905, conveyed the lands described in said contract and the whole thereof and also all other lands owned by it in Marion County, Oregon, and plaintiffs aver that they are informed and believe, and therefore allege, that the defendant owns no property in Marion County, or in

Polk County, or elsewhere, and is wholly unable to respond in damages or to pay or discharge any judgment which plaintiffs might recover against it in an action at law, and as plaintiffs are informed and believe and therefore allege the defendant is insolvent. That the plaintiffs have no plain, speedy, adequate, or any remedy at law, and will be irreparably injured without the intervention and protection of a court of equity. Wherefore said plaintiffs pray for a preliminary injunction of this honorable court against the defendant herein, enjoining, restraining, and prohibiting it, its attorneys, agents, servants, and employees from applying for a writ of execution for its collection of said judgment and mandate, and that the clerk of said court be enjoined and restrained from issuing said writ of execution, and that the sheriff be also enjoined and restrained from executing any such writ of execution which is or shall at any time be placed in his hands for service, and that said defendant be enjoined and restrained from collecting said judgment, and that on the final determination of this suit that plaintiffs be granted a decree herein setting aside, cancelling, and satisfying said judgment and mandate upon plaintiffs paying said damages, and that plaintiffs have judgment against said defendant for their costs and disbursements of this suit, and for such other further or different order in the premises as to the court shall seem meet with equity and good conscience."

To this complaint defendant answered, admitting the execution of the contract alluded to, the trial of the action, and obtaining of the judgment alleged in the complaint, but denied each and every other allegation in the complaint, except the service of the notice in writing on April 30, 1908, as set out therein, and as an affirmative defense, in substance, avers that since February 1, 1906, plaintiffs have wrongfully claimed and maintained that defendant committed a breach in the contract, and has wrongfully claimed the contract was null and void (in support of which reference is made to the decision of the Supreme Court, 51 Or. 527 [92 Pac. 1084]), on the grounds· that the contract so made was untenable; that in addition

to the actions referred to in the complaint defendant had recovered judgment against plaintiffs in the sum of $6,000, with costs added, for plaintiffs' failure to perform their part of the contract during the year 1907, which judgment is now unsatisfied, and from which T. A. Livesley & Co., the plaintiffs, have prosecuted an appeal to the Supreme Court; that, in addition to other damages incurred, by reason of plaintiffs' failure to comply with the contract, the defendant has incurred heavy expenses in the sum of $2,000 for attorney's fees, disbursed by appellants in the several actions; that the present suit is instituted for the purpose of delay, and with the view of requiring defendant to incur further expense, for which reason dismissal of the suit is demanded. A demurrer was interposed to the new matter in the answer, on the grounds that it did not state facts sufficient to   constitute any answer, but was overruled.

A reply followed, admitting, in effect, that since February, 1906, plaintiffs maintained that defendant had committed a breach of the contract, as stated in the complaint, and that in March, 1906, they gave notice of rescission on their part of the contract; that the Supreme Court had decided as alleged; that judgment was obtained for the $6,000 damages as averred, and from which an appeal is pending, in reference to which appeal it is alleged that plaintiffs gave an undertaking for stay of proceedings. Plaintiffs then deny any knowledge or information respecting the $2,000 additional damages for attorney's fees, etc., or that this proceeding is instituted for delay, etc. The cause was tried before the court, resulting in a decree of dismissal of the suit, including a dissolution of the temporary restraining order, previously issued, from which this appeal is prosecuted. Pending the appeal an *ex parte* application was made to this court for an order, restraining defendant from pro-

ceeding with the collection of the judgment, and asking that its enforcement be enjoined until the final determination hereof, which order was granted.   See *Livesley v. Krebs Hop Co.*, 97 Pac. 718.    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Teal & Minor* and *Mr. William M. Kaiser*, with oral arguments by *Mr. Joseph N. Teal* and *Mr. Kaiser*.

For respondents there was a brief with oral arguments by *Mr. John A. Carson* and *Mr. Thomas Brown*.

MR. JUSTICE KING delivered the opinion of the court.

4. The sufficiency of the judgment sought to be enjoined is not questioned, nor does this proceeding seek in any manner to set aside, change, or modify it.   Plaintiffs base their claim for an accounting upon the value of the hops on October 15, 1906, the date provided in the contract for the delivery of the quantity agreed to be purchased.   The value on and about that date by uncontradicted testimony is shown to have been from 14 to 15 cents per pound.   No averment is made, nor is it disclosed, that plaintiffs were willing and able to receive the hops at that time.   In fact, it is unquestioned that, whether able to do so or not, they were unwilling to receive them.   A written notice had been given by plaintiffs to the Krebs Company in the spring of 1906 to the effect that they had withdrawn from the contract, and would thereafter refuse, in any manner, to be bound thereby.   This notice was supplemented and further kept in force by the prosecution of the appeal in the action, in which the judgment was secured, which proceeding was not disposed of until April 28, 1908; also by the additional feature of refusing to accept the crop agreed to be purchased for the year 1907, on account of which a judgment in defendant's favor for $6,000 damages was finally secured.   See 55 Or. 227 (104 Pac. 3).   No issue

is presented relative to the value of the hops at the time
any part thereof was sold by defendant, nor does it appear
that any claim is made upon that basis. It does appear
from the evidence, however, that the hops were kept
until the spring of 1907, at which time a large part was
sold, and that they were then worth on the market seven
cents per pound; but what was received for them is
not disclosed. It is also stated, and unquestioned, that at
the time of the entry of the mandate April 30, 1908, the
hops held over from 1906, and remaining unsold, were
worth from 2 to $2\frac{1}{2}$ cents per pound. It further appears
without contradiction that on October 15, 1906, and until
a part thereof was sold, defendant company had all the
hops on hand, ready for delivery if demanded, but that
no demand was made therefor, and that no offer was
made to deliver them. We are of the opinion that under
this state of facts, after refusal and continued refusal
to recognize the contract as being in force, or to, in any
manner, comply with the terms of the contract, plaintiffs
are precluded in a court of equity from demanding a
settlement upon the basis stated. While the court had,
contrary to their contention, held the contract effective,
it would be inequitable to hold the Krebs Company to an
accounting on the basis demanded.

5. The course pursued by plaintiffs during all the time
prior to April 30, 1908, was, in effect, to say to the Krebs
Company:

"You own the hops. We do not, nor will we receive
them."

And, although the Krebs Company was at the same
time contending for its money and that plaintiffs should
accept the hops, it was not bound to sell the crop for the
security and protection of purchasers, who were refusing
to recognize that they had any interest therein. Under
these circumstances, it was for the Krebs Company to

decide whether it would sell the hops and retain the proceeds, awaiting the final outcome of the pending litigation, or hold the hops in readiness for delivery at the termination thereof, and only in case of fraud, or for an abuse of discretion, neither of which is alleged or shown, could it be held accountable for any greater sum than received therefor.

6. It is well settled that under the facts here presented it was not incumbent upon the defendant, in order to avoid responsibility insisted upon for retention of the hops, to tender a delivery thereof on the date specified in the contract; for, as stated, plaintiffs were refusing to accept, and had not in any way signified a change of heart in relation thereto, and the law does not contemplate the doing of a vain or useless act. Newmark, Sales, § 245; *Catlin* v. *Jones*, 48 Or. 158 (85 Pac. 515) ; *Guillaume* v. *K. S. D. Land Co.*, 48 Or. 400 (86 Pac. 883: 88 Pac. 586) ; *Smith Bros.* v. *Wheeler & Simmons*, 7 Or. 52 (33 Am. Rep. 698) ; *West* v. *Washington Ry. Co.*, 49 Or. 436, 449 (90 Pac. 666) ; *Merrill* v. *Hexter*, 52 Or. 138, 144 (94 Pac. 972: 96 Pac. 865) ; *Wagner* v. *Supreme Lodge K. of L. of H.*, 128 Mich. 660, 667.

7. In the absence, then, of any showing of fraud in holding the hops past the 14 cent per pound market, plaintiffs, not only by their failure to establish their willingness and ability to receive them, but by their written notice and continued determination that they would not accept them, are precluded from insisting upon a settlement on the basis demanded. If the Krebs Company had acted wrongfully in holding the hops, it would have been liable for the highest market price between the date provided for the delivery and time of actual sale thereof. *Hamer* v. *Hathaway*, 33 Cal. 117; *Learock* v. *Paxson*, 208 Pa. 602 (57 Atl. 1097). But the defendant was not a wrongdoer; hence that rule cannot be invoked against it. If defendant had held the hops until the close of the

litigation then pending, Livesley & Co. would have been entitled to the hops only; and, if not on hand, then the Krebs Company, assuming plaintiffs could maintain a suit for that purpose, would be required to account for the moneys received therefor. The evidence before us is inadequate for an accounting on that basis. In fact, the course pursued at the trial, as well as in this court, clearly manifests an intention to rely solely upon the value of the hops on or about October 15, 1906. The reason for such sole reliance is obvious; for the market value of the hops at the date of the sale was seven cents, and of those on hand at entry of mandate in the action, wherein the judgment was secured, but $2\frac{1}{2}$ cents per pound, disclosing a loss to defendant.

8. Counsel for defendant insist that, under the provisions of Section 559, B. & C. Comp., a ten per cent penalty should be imposed. We are unable to accede to this view. The legal problems presented we have not found easy of solution, and are of a class concerning which eminent counsel may differ, as they appear to do in this instance. The suit was manifestly instituted and prosecuted in good faith, and accordingly does not come within the statute invoked.

The decree of the court below is affirmed, and the restraining order here issued dissolved.

AFFIRMED: RESTRAINING ORDER DISSOLVED.

Mr. Justice SLATER, having been of counsel in the former proceeding, did not participate herein.

Decided Dec. 13, 1910.

## ON PETITION FOR REHEARING.

[112 Pac. 1.]

MR. JUSTICE KING delivered the opinion of the court.

MR. JUSTICE EAKIN and MR. JUSTICE MCBRIDE dissenting.

9. After a careful re-examination into the merits of this cause on rehearing, we are unable to recede from our views as expressed in our former opinion. If there is any error in the proceedings, it is the sustaining of the judgment entered in the first instance. The writer is inclined to the view that plaintiff in that proceeding should have been required to sue in tort and not on contract, as was done in the subsequent action, in which the judgment was sustained on appeal. See *Krebs Hop Co.* v. *Livesley,* 55 Or. 227 (104 Pac. 3.) But this remedy, the court held, was not insisted upon in the trial court; hence waived: *Krebs Hop Co.* v. *Livesley,* 51 Or. 527 (92 Pac. 1084). Whatever may now be our view upon this question of practice is unimportant, for the rule there announced, as held in the case first cited, has become the law of this case, to avoid which no remedy is available. To sustain the contention that defendant, at the date for delivery mentioned in the contract, was obliged to offer to deliver the hops, would amount to an overruling of all the previous decisions of this court cited in our former opinion herein, to the effect that an offer after its refusal is unnecessary, as well as to disregard the rules announced in the two decisions above cited. That this should not be done is elementary. The rules by which the duty of a seller toward a buyer repudiating a contract of the class giving rise to this controversy is determined is clearly and concisely stated by Mr. Justice MARTIN, who in the case of *Moore* v. *Potter,* 155 N. Y.

481 (50 N. E. 271: 63 Am. St. Rep. 692), in speaking
for the court, says:

"It is well established by the decisions of this court
that a vendor of personal property, when the vendee has
declined to take the property and pay for it, ordinarily
has the choice of any of three methods to indemnify him-
self against loss: (1) He may store or retain the prop-
erty for the vendee and sue him for the entire purchase
price.   (2) He may sell the property and recover the
difference between the contract price and the price
obtained upon a resale.   Or (3) he may keep the property
as his own, and recover the difference between the market
value at the time and place of delivery and the contract
price."

Had defendant, after awaiting the actual sale of the
hops (which sale, under the circumstances, was made
within a reasonable time), brought an action for dam-
ages against plaintiffs, then plaintiffs might have availed
themselves of the defense that the market price on the
date of contemplated delivery was adequate to offset the
claim, and thereby have constituted a defense thereto,
but that is not the situation here.   Should we assume, as
contended by plaintiffs, that the property was not retained
by defendant for plaintiffs, then, as indicated in the
action in which this judgment was procured, the remedy
should be an action for damages.   Under all the adjudi-
cations between the parties, this court has held the con-
tract severable and plaintiffs liable in a separate action
on each breach thereof.   Suppose that defendant had
followed the proper course by bringing an action for
damages only, and had obtained a judgment, it would
hardly be argued that the judgment thus procured must
be canceled on the grounds and in the manner asserted
in this proceeding.   Had the question been raised at the
trial in the first instance, defendant would have been
required to sue for damages, and a judgment would have
been procured therefor, but, this feature being waived,

the judgment involved, serving the same purpose, was secured. It is difficult, therefore, to conceive on what theory, or under what rule of practice or law, a judgment in tort, which would not have been canceled, must be annulled when the same result by judicial decision has been recognized as being properly secured on contract.

Again, there is nothing in the pleadings to indicate that plaintiffs were either ready or willing to receive the hops at the date fixed by the contract for their delivery, or that, in lieu thereof, they would have accepted the money received therefor had the hops been sold. The injury complained of is a result of plaintiffs' default. Then, in the absence of fraud or wrongful intent, shall defendant be held bound to cancel a judgment legally acquired by reason of the fact that on October 15th it did not choose to become the agent of plaintiffs, and sell the property which plaintiffs at all times insisted did not belong to them? To recognize the rule contended for by plaintiffs would be to permit the party most in fault to take advantage of his own mistake, to the prejudice of the one least in fault, and whose fault, if any, consisted in an error of judgment as to the best or most profitable time to dispose of the property. Had defendant sold the hops on the 15th day of October at the then market price of 14 cents per pound, and had hops of that class on the date of the final determination of the suit been worth 50 cents per pound, plaintiffs would have been in equally as good standing in a court of equity to demand an accounting against defendant, as now to insist that, after placing defendant where it could not deliver to plaintiffs, it must be held bound to cancel a judgment, the validity of which is unquestioned, merely because plaintiffs might have found a purchaser at the market price on October 15th. It will thus be seen that defendant as a result of plaintiffs' course was at best placed in a perplexing position, and, in the absence of

fraud, should not in equity be required to suffer a loss, as a result of giving faith to the declarations of plaintiffs' agents, merely because such agents subsequently changed their minds. Saying that plaintiffs have received nothing or will receive nothing for the $4,000 for which the judgment has been secured, is of no avail, for, admitting this contention, it must also be conceded that defendant after receiving this sum will still be the loser on the contract as a result of plaintiffs' rescission thereof.

The authorities relied upon by plaintiffs are cases where the complainants were prevented by fraud or accident, unmixed with any fraud or negligence in themselves or their agents from procuring the relief desired, under which circumstances courts of equity are authorized to enjoin an adverse party from enforcing a judgment. But these conditions are wanting here, and the cases relied on are accordingly not in point. The complaint recites that defendant neither delivered the hops nor accounted for the proceeds. As shown, the question of delivery is out of the case. If plaintiffs can recover at all, it must be on the basis of an accounting for the proceeds received from the sale, which, as before indicated, on account of the sale being at a loss, would avail plaintiffs nothing. At the oral argument it was admitted and we think properly, that plaintiffs under the showing made are not entitled to recover anything on that basis, and "have no enforceable claim against the defendant"; it being urged that, on account of the market price of the hops equalling the contract price on the date of intended delivery, the judgment should in equity be canceled. But we are not conscious of any system of reasoning by which it can be held that a valid and subsisting judgment may in equity be canceled by a nonenforceable claim. There is no doubt as to the soundness of the contention that defendant had the right to hold the hops until the agreed date of delivery, and then

resell them and hold the purchaser for the loss occasioned thereby, but it does not follow, nor do the authorities go to the extent of holding, that defendant under the facts was bound to pursue this course. It was only one of defendant's privileges, and not a necessary course, especially in view of the fact that the purchasers, through their failure to comply with the contract, placed the seller in the embarrassing position of determining upon the safest course to pursue in order to escape loss.

Considered from any standpoint, defendant is least in fault, and the misfortune, if any, must fall to the lot of those to whose acts the conditions complained of are directly traceable—the plaintiffs. Under the most favorable view possible to plaintiffs, more cannot be said than that as between them and defendant, their equities are equal, and, being so, the law must prevail. The law gives to defendant the judgment, and under the issues and showing made, a court of equity is powerless to annul it.

10. Mr. Chief Justice MOORE concurs in the foregoing opinion, and Mr. Justice EAKIN and Mr. Justice MCBRIDE dissent. Mr. Justice SLATER being of counsel in the court below, did not sit. The court being equally divided, the decree of the trial court is affirmed.    AFFIRMED.

MR. JUSTICE EAKIN delivered the following dissenting opinion.

I examined this case upon the record and briefs at the time the opinion was written and fully concurred therein, but, upon further examination of the case, I have determined that the conclusion of the opinion is wrong.

It appears that the plaintiffs sought to cancel the contract before any payment by them was made thereon. Defendant, however, refused to acquiesce therein or permit plaintiffs to rescind. For the purpose of enforcing

the contract, defendant brought an action in the circuit court to recover the two advance payments overdue, and recovered judgment, which, in effect, adjudged that plaintiffs could not repudiate the contract, but must perform it. Thus the effect of the judgment of the court and defendant's conduct was that the contract continued in full force. Therefore plaintiffs were also bound to fulfill it. By reason thereof defendant has waived plaintiffs' default in payment as constituting a forfeiture, and has insisted upon performance, notwithstanding the default. When the judgment was rendered against these plaintiffs for such payments, they stood in the same position as if they had made the payment long after maturity; the delay having been waived by defendant. In other words, the effect of the judgment was not a recovery upon a forfeiture, but was a determination that plaintiffs, so far as these two payments were concerned, were entitled and required to proceed with the contract, and therefore defendant also was bound to perform. If, upon the abandonment of the contract by these plaintiffs, defendant had treated it as a breach and had sought only indemnity therefor, it would not have been necessary for defendant to make a tender of the hops, or otherwise proceed with performance of the contract. But as defendant refused to permit plaintiffs to abandon the contract, demanded performance, and secured the judgment aiding them to enforce it, it was its duty also to perform. It could not while enforcing the contract against plaintiffs treat it as forfeited or abandoned by them or ignore it itself. To avoid default on its own part, therefore, it was necessary to make a tender of the hops as a step in its further enforcement against plaintiffs.

In *Lake Shore & M. S. R. Co.* v. *Richards,* 152 Ill. 59, (38 N. E. 773: 30 L. R. A. 33), the court in discussing the rights of the parties in case of a breach by one say:

"It is well settled that where one party repudiates the contract, and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: (1) He may treat the contract as rescinded, and recover upon *quantum meruit,* so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified for performance sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing."

This defendant has elected to rely upon the second remedy above mentioned, to keep the contract alive for the benefit of both parties, and at the time for the delivery of the hops it must have tendered them. In *Kadish* v. *Young,* 108 Ill. 170 (43 Am. Rep. 548), a contract was made for the future delivery of grain, and the next day the purchasers gave notice that they would not be bound by the contract, and the question was whether such notice created a breach of the contract, or whether, notwithstanding the notice, the seller had the legal right to wait until the day for delivery under the contract and then resell and charge the purchaser with the difference, and it was held that the seller was not bound to act upon the notice, but was entitled on the day for delivery fixed by the contract to tender, resell, and charge the purchaser with the difference. It is said in *Johnstone* v. *Milling,* L. R. 16 Q. B. Div. 460, that the real operation of a renunciation of the contract gives the other party the right of electing, either to treat the declaration as *brutum fulmen* and holding fast to the contract, to wait till the time for its performance has arrived, or to act upon it and treat it as a final termination of the contract. In the latter case he may recover upon the breach at once. In *Frost* v. *Knight,* L. R. 7

Exch. 111, it is said that the promisee may, if he pleases, treat the notice of intention as inoperative and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance, "but in that case he keeps the contract alive for the benefit of the other party as well as his own. He remains subject to all his obligations and liabilities under it, and enables the other party not only to complete the contract, * * but also to take advantage of any supervening circumstance which would justify him in declining to complete it," such as the default of the other party.

In this case defendant was required either to act upon the renunciation by plaintiffs as final and recover upon it as a breach, or, as it attempted to do, ignore it and keep the contract alive for the benefit of both parties by fulfilling the contract on its part; but it failed to perfect this remedy, not having tendered the hops on the day for delivery, and thereafter having sold them at plaintiffs' risk. Defendant could not hold the hops more than a reasonable time beyond the date for delivery before selling them. If it held them, awaiting a rise in price, it did so at its own risk, and not that of the plaintiffs. Sutherland, Damages (3 ed.) § 647, says, that on the failure of the vendee to receive the property the measure of the vendor's damage is the difference between the contract price and the market value at the time and place of the breach, and that this market value may be ascertained and fixed by a resale within a reasonable time, which means the earliest practicable period after the time for delivery. And, if there is a market value for the property, he cannot keep it for a rise in price at the vendee's risk. Sutherland, Damages (3 ed.) § 570; *Jochams* v. *Ong.* 45 La. Ann. 1289 (14 South. 247) ; *Gehl* v. *Milwaukee Produce Company,* 116 Wis. 263 (92 N. W. 26).

Plaintiffs have received nothing for the $4,000 for which defendant has obtained judgment. The liability upon which the judgment was based was the contract for money to be advanced upon the hops, and, plaintiffs having been held bound to fulfill the contract, equity will require defendant also to fulfill it by accounting for the hops, according to the rules above stated; and now, because plaintiffs have received nothing for the $4,000 for which judgment was rendered, equity will see that they are only required to pay such sum upon the judgment as will compensate defendant for all damages suffered by reason of plaintiffs' refusal in the first place to perform. If defendant were seeking to recover on the contract, plaintiffs' repudiation of it would have excused defendant from the necessity of a tender; but defendant is not acting upon plaintiffs' repudiation. It has insisted upon performance and the court has decided that plaintiffs must perform. Therefore the situation is changed. Not only may plaintiffs have desired to proceed with the contract, but it is already determined for them, both by defendant and the court, that they must do so, and the writer of this opinion deems that a tender of the hops was necessary; but, even if unnecessary, as held in the opinion, that is all that is waived. Defendant must sell within a reasonable time or hold the hops at its own risk. The measure of its damage is the difference in value between the contract price and the market value at the time for the delivery and the collection of the judgment beyond that amount should be perpetually enjoined. It appears from the record that at the time for delivery the hops were worth the contract price. Therefore the decree should be reversed and one rendered here, requiring plaintiffs to pay to defendant all costs and disbursements incurred by it in the law action as specified in their written tender, and that the judgment be canceled.

Mr. Justice McBride concurs in this dissent.