Argued March 19, decided April 16, rehearing denied July 2, 1912.

## ARMSBY *v.* GRAYS HARBOR COMMERCIAL CO.

[123 Pac. 32.] ·

CONTRACTS—"RESCISSION"—WHAT CONSTITUTES.

1. The revocation of a contract of sale by agreement of the parties, or by an attempt of one party to revoke, acceded to by the other, or by a breach by one party which precludes him from any remedy thereon, and for which the other party revokes it, constitutes "rescission."

CONTRACTS—RESCISSION—EFFECT OF MUTUAL RESCISSION.

2. Where a contract of sale is mutually rescinded, the parties are placed in *statu quo.*

CONTRACTS—REPUDIATION—REMEDIES.

3. Where a contract is repudiated by one of the parties, the other, if guilty of no breach, may either treat it as still in force, or may treat the repudiation as a rescission, in which case payments may be recovered or compensation had for property delivered.

SALES—REPUDIATION—WHAT CONSTITUTES.

4. Where the purchaser of shooks, to be used for boxes during the packing season, defaulted in the payments for early shipments, a letter by the purchaser, informing the seller that it would not pay the balance due, but would hold it as indemnity for further shipments, and would make no further payments, unless the seller complied with the purchaser's requirements, constituted a repudiation of the contract.

SALES—REPUDIATION—BREACH—DIVISIBLE CONTRACT.

5. Where a party to a continuous contract of sale, which is of a divisible nature, makes a default, accompanied with an announcement of intention not to perform it on the agreed terms, it constitutes a repudiation.

SALES—CONTRACTS—BREACH—CONTINUOUS CONTRACTS.

6. Where a continuous contract of sale calls for various deliveries, each default in payment for the various deliveries constitutes a separate breach.

SALES—REMEDIES OF BUYER.

7. Where the purchaser of shooks, which were to be shipped throughout the packing season, defaulted in the payment for early shipments, and later announced that it would not make payment, but would hold the amount due as indemnity in case of the seller's default, the purchaser had no remedy for seller's repudiation; it having repudiated the contract of sale while in default.

SALES—CONTRACTS—TIME OF PAYMENT.

8. Where a contract for the sale of shooks called for delivery in installments, the acceptance of a partial shipment on an order precluded the buyer from contending that payments were not due until the whole of a particular shipping order was filled.

·SALES—REMEDIES OF BUYER—EVIDENCE—SUFFICIENCY.

9. In an action by the buyer of shooks for the seller's breach, evidence *held* to show that the buyer agreed to pay for the shooks as delivered.

SALES—REMEDIES OF BUYER—EVIDENCE—SUFFICIENCY.

10. In an action by the buyer of shooks for the seller's breach in failing to deliver, evidence *held* to show that the amount still due on the shooks delivered exceeded the buyer's damages for the breach.

TRIAL—MOTION FOR NONSUIT—GROUNDS.

11. While a motion for nonsuit should specify the defects in plaintiff's case, so that he may correct them, yet, where the defect is incurable, a motion for nonsuit, on the ground of failure to prove a cause sufficient to go to the jury, is sufficient to warrant the granting of the motion.

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by The J. K. Armsby Company, a corporation, plaintiff and appellant, against Grays Harbor Commercial Company, a corporation; Northwestern Lumber Company, a corporation; Standard Box & Lumber Company, a corporation; Star Box Company, a corporation; Multnomah Lumber & Box Company, a corporation;

Multnomah Trunk Company, a corporation; Astoria Box
Company, a corporation; Clatsop Mill Company, a cor-
poration; Necanicum Spruce Lumber Company, a cor-
poration; Davidson Fruit Company, a corporation; F. W.
Morse Manufacturing Company, a corporation; Columbia
Box & Lumber Company, a corporation; Pacific Box Com-
pany, a corporation; The Fidalgo Mill Company, a cor-
poration; Washington Mill Company, a corporation;
Queen City Manufacturing Company, a corporation;
National Box & Lumber Company, a corporation; H. L.
Bennett, A. A. Courteney, and Northern Box Manufac-
turers' Agency, defendants and respondents, who were
joint parties in the organization of a commercial agency
to recover damages for failure of the agency to deliver
contracted goods.   Fourteen of the defendants, as prin-
cipals, being corporations engaged in the manufacture of
boxes and box materials, in March, 1902, formed an asso-
ciation and entered into an agreement among themselves
to maintain an agency at Portland, to be known as
"Northern Box Manufacturers' Agency," for the pur-
pose of facilitating the sale of boxes and box materials
manufactured by them, and appointed A. A. Courteney
as its general agent and manager.   On March 3, 1906,
the agency entered into an agreement with plaintiff, a
corporation, engaged in packing fruit in California and
Washington, by which plaintiff agreed to purchase all
box materials used by it from the Northern Box Manu-
facturers' Agency for the term of three years, and the
agency agreed, for that period of time, to fill all orders
promptly, namely, within ten days from the time the
orders were received, at prices named, and plaintiff to pay
for the same within ten days after the arrival of the
shooks. The complaint states that defendants executed
the contract in part, but alleges that it failed to deliver
large numbers of boxes ordered, and that on October 13,
1906, gave plaintiff notice that it canceled the contract,

and alleged that $8,946.76, due defendants for goods delivered, was retained by it to indemnify it against damages by reason of defendants' failure to deliver all the materials ordered. It also alleges that it has been damaged by defendants' default in the sum of $58,233.91 by reason of the increased price it was required to pay in the open market for shooks required by it, on account of defendants' failure to fill orders during the years 1906, 1907, and 1908.

Seventeen defendants are named in the complaint, but service was had upon five, namely: Multnomah Box & Lumber Company, Astoria Box Company, Davidson Fruit Company, Standard Box & Lumber Company, and A. A. Courteney. Each answered separately, denying that the agency had any authority to make contracts for the defendants jointly; that plaintiff rescinded and annulled the contract on October 12, 1906; that plaintiff had violated the contract in neglecting and refusing to pay the agency the amounts due for shooks received by it, namely, in the amount of $8,946; and that, on account of such failure of plaintiff to pay the sums due, the agency, on its own behalf and that of its principals, rescinded the contract. The Multnomah Box & Lumber Company further denies that it was a party to or member of the agency. It seems that plaintiff was in default of payment for shipments made in June, July, August, and September, though frequently demanded; and on October 13, 1906, the agency wired plaintiff as follows:

"On account of your failure to pay for shooks shipped in accordance with provisions of contract, we hereby notify you, no further shipments will be made and that the contract is rescinded."

This telegram is confirmed by a letter of the same date. On the day previous (October 12th), plaintiff wrote to the agency as follows, the envelope being postmarked October 13th:

"Replying to your letter of October 1st and your wires of October 10th and 12th reading, respectively: 'Need money badly eight thousand overdue, have you remitted or when will you? Answer immediately' and 'Please give me reply to my telegram of tenth inst. and letter of first.' We beg to say that we have not made remittance, and that the situation in which you have placed us is a very serious one. * * The J. K. Armsby Co. is ready and able at all times to absolutely live up to the letter and spirit of every agreement and contract it makes, and has lived up to and is willing even now to maintain this agreement which you have so flagrantly broken, if you can give us a satisfactory guarantee, that the shipments due, and the order placed herewith, will be from now on, delivered in accordance with the terms of the contract, but unless you can and do give us such satisfactory assurance for the future faithful performance of this agreement and immediate shipment of all unfilled orders and order placed herewith, we most respectfully decline to make any further payments thereunder and hereby notify you that unless you comply with our requirements aforesaid, that having broken your contract with us by your failure to live up to and carry out the terms thereof, we shall consider the contract at an end and hold you liable," etc.

The case was tried before a jury, and at the close of plaintiff's evidence each defendant moved for a judgment of nonsuit, which motions were granted by the court.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Titus & Creed, Mr. F. W. Mulkey, Messrs. Teal & Minor,* and *Mr. W. A. Johnson,* with oral arguments by *Mr. Mulkey* and *Mr. Wirt Minor.*

For respondent Multnomah Lumber & Box Co., there was a brief over the names of *Messrs. Platt & Platt,* with an oral argument by *Mr. H. G. Platt.*

For respondent Astoria Box Co., there was a brief over the names of *Messrs. Charles W. & George C. Fulton,* with an oral argument by *Mr. Charles W. Fulton.*

For respondent Davidson Fruit Co., there was a brief over the names of *Messrs. Cake & Cake,* with an oral argument by *Mr. John T. McKee.*

For respondent A. A. Courteney, there was a brief and an oral argument by *Mr. Hayward H. Riddell.*

For respondent Standard Box & Lumber Co., there was a brief with oral arguments by *Mr. Austin F. Flegel* and *Mr. John W. Reynolds.*

Opinion by MR. CHIEF JUSTICE EAKIN.

The motion for judgment of nonsuit, filed by Courteney, specifies six grounds therefor; the third being that "plaintiff's evidence shows that on October 12, 1906, plaintiff was in default for nonpayment of the moneys due for shooks purchased and delivered under said contract, and that while in default plaintiff canceled and rescinded the contract and refused to be further bound by it, and refused to make payment of the sums then due thereunder, to wit, the sum of $8,900." Others of the motions followed the language of the statute in assigning the grounds of the motion, namely, "for the reason that the plaintiff has failed to prove a cause sufficient to be submitted to the jury."

We will first consider the motions for non-suit. By the terms of plaintiff's letter of the 12th of October, and the telegram and letter sent by the agency on October 13th, the contract was repudiated by each at approximately the same time, each claiming to have canceled it on account of the default of the other, and the cancellation was acquiesced in by both, as neither recognized the contract as in force thereafter. The trial court recognized these acts as amounting to a cancellation of the contract, and excluded evidence relating to matters occurring after October 12th.

1. The term "rescission," in relation to contracts, can

only apply to the unmaking of the contract, the revoking of it by mutual agreement of the parties; or it may be effected by an attempt to revoke the contract by one party, acceded to by the other, or a breach by one which precludes him from any remedy thereon, and for which the other party revokes it:   *Miller* v. *Shelburn,* 15 N. D. 182 (107 N. W. 51) ; *Bannister* v. *Read,* 6 Gilman (Ill.) 92.

2, 3. In the case before us, the cancellation was not mutually accomplished, as each party acted independently; but each recognized the contract as at an end. When a contract is mutually rescinded, the parties are placed in their original position, as if it had not been made.   Each party is entitled to be placed in *statu quo.* Upon a renunciation of the contract by one party, the other, being guilty of no breach, may elect to treat it as still in force, in which case his remedy is upon the contract; or he may treat it as a rescission, in which case payments made may be recovered, or compensation had for property delivered.

In *Lake Shore & M. S. R. Co.* v. *Richards,* 152 Ill. 59 (38 N. E. 773: 30 L. R. A. 33), it is said: "It is well settled that, where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies:   (1) He may treat the contract as rescinded, and recover upon *quantum meruit,* so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified for performance sue and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance," and sue for damages for a breach.   This question is discussed in the dissenting opinion in *Livesley* v. *Krebs Hop Company,* 57 Or. 352 (97 Pac. 718: 107 Pac. 460: 112 Pac. 1).

Leake, Contracts (4 ed.) 618, says that the "renuncia-
tion of a contract will operate as a present breach only,
if accepted and acted upon as such by the other party,
who may, if he pleases, disregard it and insist upon per-
formance according to its terms.  The promisee may
treat the notice of intention as inoperative and await the
time when the contract is to be executed, and then hold
the other party responsible for all the consequences of
nonperformance.  But in that case he keeps the contract
alive for the benefit of the other party, as well as his own;
he remains subject to all his own obligations and liabil-
ities under it, and enables the other party, not only to
complete the contract, if so advised, notwithstanding his
previous repudiation of it, but also to take advantage of
any supervening circumstance which would justify him
in declining to complete it.' "   See, also, *United States* v.
*Behan,* 110 U. S. 338 (4 Sup. Ct. 81: 28 L. Ed. 168);
*Meacham* v. *Gardner,* 27 Pa. Super. Ct. 296; *Shaffner* v.
*Killian,* 7 Ill. App. 620; *Blackburn* v. *Reilly,* 47 N. J.
Law, 290, 308 (1 Atl. 27: 54 Am. Rep. 159); *Alden* v.
*Thurber,* 149 Mass. 271 (21 N. E. 312).

In *Graves* v. *White,* 87 N. Y. 463, 465, it is said:

"The doctrine of these authorities is that the refusal
of one party to perform his contract amounts on his part
to an abandonment of it.  The other party thereupon
has a choice of remedies:  He may stand upon his con-
tract, refusing assent to his adversary's attempt to rescind
it, and sue for a breach, or, in a proper case, for a specific
performance; or he may assent to its abandonment, and
so effect a dissolution of the contract by the mutual and
concurring assent of both parties.  In that event, he is
simply restored to his original position, and can neither
sue for a breach nor compel a specific performance,
because the contract itself has been dissolved." *Lawrence*
v. *Taylor,* 5 Hill (N. Y.) 107; *Hayes* v. *Stortz,* 131 Mich.
63, 65 (90 N. W. 678); *Drew* v. *Claggett,* 39 N. H. 431.

4. By the fourth proviso of the contract, the defend-

ants were to ship such shooks as might be ordered by the party of the first part in advance of the packing season, the same to be known as "reserve stock." Under that provision, plaintiff, on April 2, 1906, ordered 190,000 shooks to be cut, for which shipping orders were to be forwarded later. Of that order, but three car loads were ordered shipped, which were duly received by plaintiff. Shooks of the value of only $13,530 were shipped; the first shipment being from the reserve stock of April 2nd. The order of June 16th was not all shipped, and there was default in filling the order of July 27th. No complaint was made by plaintiff as to the delay in shipments until after August 18th, and the plaintiff's packing season does not begin until September. Plaintiff was in default in payments, beginning with the shipment in June. The record does not give us the dates of payments; but plaintiff admits that on October 12th it was in default in the sum of $8,946. Therefore it had only paid on all shipments $4,491. The evidence tends to show that the defendants were also in default in making shipments; and on October 12th, while plaintiff was so in default, it states that it will not pay, but will retain, the balance due as indemnity against any damages it may be entitled to for defendants' default. Plaintiff, in the letter of October 12th, says:

"We * * decline to make further payments thereunder and hereby notify you that unless you comply with our requirements aforesaid, * * we shall consider the contract at an end and hold you liable for all loss."

Plaintiff thus acted independently of defendants' repudiation of the contract, and abandoned it without knowledge of defendants' act. Making a demand that defendants give a guaranty for future fulfillment of the contract, "and without which we shall consider the contract at an end," was a repudiation of it. As said in *Johnson Forge Co.* v. *Leonard & Co.,* 3 Pennewill (Del.)

342, 350 (51 Atl. 305, 308 : 94 Am. St. Rep. 86 : 57 L. R. A. 225) :

"If a default by one party in making particular payments or deliveries * * is accompanied with an announcement of intention not to perform the contract upon the agreed terms, or if, in the language of the court below, the default is accompanied with a deliberate demand, 'insisting upon new terms different from the original agreement,' the other party may treat the contract as being at end."

In that case, the court held that the right of the seller to rescind for the default of the purchaser depends upon his not being in default himself. This is also made a controlling element in *Ballou* v. *Billings,* 136 Mass. 307. See, also, *Purcell* v. *Sage,* 200 Ill. 342 (35 N. E. 723).

5. Therefore, as the contract was at an end, plaintiff, being in default in performance, cannot sue defendants for damages for its breach. Plaintiff's rights are controlled by a different rule that in case defendants had attempted to rescind the contract, and plaintiff, not being in default, had treated such attempt as a breach, and claimed such damages as he had suffered. However, that is the theory upon which plaintiff now seeks to recover. But the evidence does not bring him within that rule. Even though defendants disaffirmed the contract, yet plaintiff has not, within the rule laid down in *Lake Shore & M. ·S. R. Co.* v. *Richards,* 152 Ill. 59 ( 38 N. E. 773 : 30 L. R. A. 33), kept the contract alive by performance on its part, but ·has also repudiated it. It is said in 9 Cyc. 649 :

"The courts are agreed that if a default in one item of a continuous contract of a divisible nature is accompanied with an announcement of intention not to perform the contract, upon the agreed terms, or, what amounts to the same thing, if the failure to fully perform is deliberate and intentional, and not the result of inadvertence or inability to perform, the rule we have been discussing

(namely, default in payment where the installments are numerous, extending over a considerable period of time, will not discharge the contract) does not apply. The other party, under these circumstances, may treat the contract as being at an end."

See *Stephenson* v. *Cady*, 117 Mass. 6; *Rugg & Bryon* v. *Moore*, 110 Pa. 236 (1 Atl. 320) ; *Blackburn* v. *Reilly*, 47 *N. J. Law* 290, 308 (1 Atl. 27 : 54 .Am. Rep. 159).

6, 7. The contract before us is divisible in the sense that each delivery and each payment was to be independent of other deliveries and payments, and each default was a separate breach of the contract: *Wooten* v. *Walters*, 110 N. C. 256 (14 S. E. 734). To what extent such breaches were waived by acceptance, or by otherwise proceeding with the contract, we need not consider. The fact is that plaintiff's default in payment was avowed and deliberate, and the other party was at liberty to treat the contract as at an end, which they did by express repudiation, and also by their acts. And the question arises: What is plaintiff's remedy upon a contract which it has repudiated, and in the performance of which it is in default?

The case of *Harber Bros. Co.* v. *Moffat Cycle Co.*, 151 Ill. 84, 96 (37 N. E. 676, 679), is very much in point upon this question. The action was upon a contract for the sale of bicycles, deliveries to be made in installments, and payment for each shipment within thirty days. Both parties were in default. The court said:

"The question here distinctly presented as the controlling one is whether a vendee who has accepted goods delivered under an express contract, but not at the time or in the quantity required by it, with knowledge of the default of the vendor in those respects, but has himself failed, without legal excuse, to pay for them according to it, can maintain an action on the contract for such a default of the vendor. We think the general rule everywhere recognized is against it. * * *Pennsylvania Coal*

*Co.* v. *Ryan,* 107 Ill. 226; *Bradley* v. *King,* 44 Ill. 339; *Stewart* v. *Many,* 7 Ill. App. 517. For appellant, the attempt is made to evade the force of these decisions by the claim that appellee was first in default, whereby appellant was damaged in the amount exceeding the price of the goods received, for which he failed to pay, and from that time until the suit was brought always had a just claim for damages by appellee's default exceeding the amount for which appellant was in arrears. * * But the question is not whether, upon a fair settlement, offsetting damages against price, appellant really owed anything, but whether, accepting the machines under contract, it performed that contract on its part as to payment."

In *Stephenson* v. *Cady,* 117 Mass. 6, where several executory contracts were made on different days for the sale of goods, and expressly relating to each other, the price to be paid upon successive deliveries, for one delivery the purchaser refused to pay, unless the seller would give security for the entire fulfillment of the contracts. It was held that the seller was released from all obligation to perform, and plaintiff could not maintain an action for a breach by defendant. In view of the fact that the plaintiff was also in default in performance of the contract and had repudiated it, it has no remedy thereon to recover damages for defendant's breach by default.

8, 9. Plaintiff further contends that it is not in default in payment for shipments, insisting that payments were not due until the whole amount of the particular shipping order was filled. If plaintiff intended to require the receipt of each shipping order in full before paying for any part of it, it should have refused to receive a partial shipment; but it accepted and used the shipments as received, without reference to the shipping order, and therefore was under obligations to pay for such as were so received. See *Harber Bros. Co.* v. *Moffat Cycle Co.,* 151 Ill. 84, 89 (37 N. E. 676). And the evidence of Richmond, plaintiff's manager and the letter of October

12th are recognitions of such liability. The reserve stock that was to be shipped in advance of the packing season from the general order of April 2nd was to be paid for "whenever the parties of the first part breaks the car," having no reference to the shipping order, and the general provisions in the contract for payment is "terms cash, within ten days after arrival," thus indicating that the time of payment is to be computed with reference to the arrival of shipments, and not from the arrival of the full order.

10. The other point upon which the trial court based its ruling is also supported by the evidence, namely, that the amount due for shooks delivered and accepted by plaintiff equals or exceeds the amount of damages sustained by it. This ruling is based upon the court's conclusion that plaintiff's repudiation of the contract put an end to it, for the purposes of further performance, and independent of plaintiff's default in payments. The damage claimed by plaintiff on account of defendants' default prior to October 12th is $11,978.71; but in that amount the plaintiff has included damages in the sum of $3,858.87 on account of 151,000 shooks of the general order of April 2nd, which were not shipped. But it is admitted that shipping orders were not given for any part thereof, and in the shipment of which defendants were not in default. Thus we see that the amount which plaintiff admits it has retained, as due to the defendants for shooks, $8,946.76, exceeds the amount of damages so disclosed.

11. Plaintiff further contends that the motions for nonsuit do not set forth the grounds upon which they are based, and are therefore insufficient. It was held in this court, in *Meier* v. *Northern Pac. Ry. Co.,* 51 Or. 69, 75 (93 Pac. 691), and in *Caldwell Bank & T. Co.* v. *Porter,* 52 Or. 318, 324 (95 Pac. 1: 97 Pac. 541), that

when the motion is specific as to the deficiencies in plaintiff's evidence the appellate court will consider no other; especially is this the case, where the motion was denied in the lower court and renewed here.   In *Ferguson* v. *Ingle,* 38 Or. 43  (62 Pac. 760), it is said that, if the grounds for the motion are not stated, the appellate court will not review the action of the trial court in denying it.   The reason for the rule is found in the fact that an appellate court will consider only such questions as have been presented to the trial court at the proper time and in the proper manner, and that plaintiff, having the defect pointed out to him, may correct it; but if the defect cannot be corrected, even if pointed out, then the absence of a specific statement of the grounds is not fatal to it. 6 Pl. & Pr. 879; *Daley* v. *Russ,* 86 Cal. 117 (24 Pac. 867). This is the ruling in *Culver* v. *Van Valkenburg,* 60 Or. 447 (119 Pac. 753).   In the case at bar, the defect in plaintiff's case is incurable, and the motion will not be disregarded.

The judgment is affirmed.          AFFIRMED.